**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. _17 CV 80619 WPD/LSS_

FILED BY _____ D.C.

MAY 1 5 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

STRATEGIC STUDENT SOLUTIONS LLC, a
limited liability company, STRATEGIC CREDIT
SOLUTIONS LLC, a limited liability company,
STRATEGIC DEBT SOLUTIONS LLC, a limited
liability company, STRATEGIC DOC PREP
SOLUTIONS LLC, a limited liability company,
STUDENT RELIEF CENTER LLC, a limited
liability company, CREDIT RELIEF CENTER
LLC, a limited liability company, and

DAVE GREEN, individually and as an officer of
STRATEGIC STUDENT SOLUTIONS LLC,
STRATEGIC CREDIT SOLUTIONS LLC,
STRATEGIC DEBT SOLUTIONS LLC,
STRATEGIC DOC PREP SOLUTIONS LLC,
STUDENT RELIEF CENTER LLC, and CREDIT
RELIEF CENTER LLC,

    Defendants, and

DG INVESTMENT PROPERTIES LLC,

    Relief Defendant.

**COMPLAINT FOR PERMANENT
INJUNCTION AND OTHER
EQUITABLE RELIEF**

**(FILED UNDER SEAL)**

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.    The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b), the Telemarketing and Consumer Fraud and Abuse

1

Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, and Section 410(b) of the

Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), to obtain temporary, preliminary, and

permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of

monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or

practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's

Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and the Credit Repair Organizations Act

("CROA"), 15 U.S.C. §§ 1679-1679j, in connection with their deceptive marketing and sale of

student loan debt relief and credit repair services.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345, and 15 U.S.C. §§ 45(a), 53(b), 6102(c), and 1679h(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), (c)(2),

and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by

statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also

enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108. Pursuant to the Telemarketing Act,

the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and

abusive telemarketing acts or practices in or affecting commerce. The FTC also enforces the

CROA, 15 U.S.C. §§ 1679-1679j, which prohibits unfair or deceptive advertising and business

practices by credit repair organizations.

5.     The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act, the TSR, and the CROA, and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 6102(c), and 1679h(b).

## DEFENDANTS

6.     Defendant Strategic Student Solutions LLC ("SSS") is a Florida limited liability company that has held itself out as doing business at 8461 Lake Worth Road, Suite 450, Lake Worth, Florida 33467; 8142 Banpo Bridge Way, Delray Beach, FL 33446; and 7260 W. Azure Drive #140, #2027, Las Vegas, NV 89130.  SSS transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, SSS has advertised, marketed, distributed, or sold student loan debt relief services and/or credit repair services to consumers throughout the United States.

7.     Defendant Strategic Credit Solutions LLC ("SCS") is a Florida limited liability company that has held itself out as doing business at 8461 Lake Worth Road, Suite 450, Lake Worth, Florida 33467; 8142 Banpo Bridge Way, Delray Beach, FL 33446; and 7260 W. Azure Drive #140, #2027, Las Vegas, NV 89130.  SCS transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, SCS has advertised, marketed, distributed, or sold student loan debt relief services and/or credit repair services to consumers throughout the United States.

8.     Defendant Strategic Debt Solutions LLC ("SDS") is a Florida limited liability company that has held itself out as doing business at 8461 Lake Worth Road, Suite 450, Lake

Worth, Florida 33467; 8142 Banpo Bridge Way, Delray Beach, FL 33446; 7260 W. Azure Drive #140, #2027, Las Vegas, FL [sic] 89130; and 1489 West Palmetto Park Road, Suites 467 and 495, Boca Raton, FL 33486.  SDS transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, SDS has advertised, marketed, distributed, or sold debt relief services and/or credit repair services to consumers throughout the United States.

9.      Defendant Strategic Doc Prep Solutions LLC ("SDPS") is a Florida limited liability company that has held itself out as doing business at 8142 Banpo Bridge Way, Delray Beach, FL 33446 and 7260 W. Azure Drive #140, #2027, Las Vegas, NV 89130.  SDPS transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, SDPS has advertised, marketed, distributed, or sold student loan debt relief services and/or credit repair services to consumers throughout the United States.

10.     Defendant Student Relief Center LLC ("SRC") is a Wyoming limited liability company that has held itself out as doing business at 7260 W. Azure Drive, Suite 140-212, Las Vegas, NV 89130 and 1489 West Palmetto Park Road, Suite 467, Boca Raton, FL 33486.  SRC transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, acting alone or in concert with others, SRC has advertised, marketed, distributed, or sold student loan debt relief services and/or credit repair services to consumers throughout the United States.

11.     Defendant Credit Relief Center ("CRC") is a Wyoming limited liability company that has held itself out as doing business at 7260 W. Azure Drive, Suite 140-212, Las Vegas, NV

89130. CRC transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, CRC has advertised, marketed, distributed, or sold student loan debt relief services and/or credit repair services to consumers throughout the United States.

12. Defendant Dave Green ("Green") is the President and sole manager of SSS, SCS, SDS, SDPS, and the Relief Defendant. Green registered and paid for the mail drop listed as the principal place of business in the corporate records of SRC and CRC. Green is the sole signatory on the bank accounts, and the responsible party for the websites, of all corporate defendants. At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of SSS, SCS, SDS, SDPS, SRC, and CRC, including the acts and practices set forth in this Complaint. Defendant Green resides in this district and, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

13. Relief Defendant DG Investment Properties LLC ("DG Investment Properties") is a Florida limited liability company that has held itself out as doing business at 8142 Banpo Bridge Way, Delray Beach, FL 33446; 7260 W. Azure Drive #140, #2027, Las Vegas, NV 89130; and 1489 West Palmetto Park Road, Suite 467, Boca Raton, FL 33486. It has received at least $450,000 in funds that can be traced directly to Defendants' deceptive acts or practices alleged below, and it has no legitimate claim to those funds. DG Investment Properties is owned by Green.

14. Defendants SSS, SCS, SDS, SDPS, SRC, and CRC (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and

5

practices and other violations of law alleged below.  Defendants have conducted the business

practices described below through an interrelated network of companies that have common

ownership, officers, managers, business functions, employees, and office locations, and that have

commingled funds.  For example, since at least February of 2017, telemarketers have begun

answering the phone number listed on the SSS website with the name SRC.  Because these

Corporate Defendants have operated as a common enterprise, each of them is jointly and

severally liable for the acts and practices alleged below.  Defendant Green has formulated,

directed, controlled, had the authority to control, or participated in the acts and practices of the

Corporate Defendants that constitute the common enterprise.

## COMMERCE

15.     At all times material to this Complaint, Defendants have maintained a substantial

course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act,

15 U.S.C. § 44.

## DEFENDANTS' DECEPTIVE STUDENT LOAN DEBT RELIEF AND CREDIT REPAIR OPERATION

16.     Since at least 2014, Defendants have operated an unlawful debt relief enterprise

that preys on consumers with student loan debt by falsely promising to reduce their student loan

payments or eliminate a portion of their debt through enrollment in student loan forgiveness or

income-driven repayment programs.  Defendants also promise that consumers' monthly

payments to Defendants will be applied to their student loans.  In many instances, however,

consumers have discovered that Defendants have failed to enroll them in any debt forgiveness or

payment reduction programs and have otherwise failed to reduce their payments or eliminate

their debt.  Further, consumers later learn that *none* of their monthly payments have gone

6

towards paying off their debt.  Indeed, in some instances, consumers have ended up owing more on their student loans than when they first signed up for Defendants' program.  Defendants have also falsely promised many consumers that their loans would be forgiven in three years or less.  And when consumers have sought to cancel their participation in Defendants' program, Defendants have falsely told consumers that if they do so, it will be very difficult or impossible to enroll in another forgiveness program.

17.     Defendants have also falsely represented that they provide credit repair services and improve consumers' credit scores.  But in many instances, Defendants do not provide credit repair services and consumers' credit scores are not improved by Defendants.

18.     In exchange for the promised debt relief and credit repair services, Defendants have charged illegal upfront fees of as much as $1,200 and monthly fees, typically of $49.99.

**Background on Student Loan Forgiveness and Repayment Programs**

19.     Student loan debt is the second largest class of consumer debt; more than 42 million Americans collectively owe nearly $1.3 trillion.  The student loan market continues to show elevated levels of distress relative to other types of consumer debt.

20.     To address this mounting level of distressed debt, the U.S. Department of Education (ED) and state government agencies administer a limited number of student loan forgiveness programs.  Most consumers, however, do not qualify for these forgiveness programs because they have strict eligibility requirements, such as demonstrating a "total and permanent disability" (ED's "Total and Permanent Disability Discharge") or demonstrating that the borrower's school has closed while the borrower was still enrolled ("Closed School Loan Discharge").  Many forgiveness programs require working in certain professions for years, such

as ED's "Teacher Loan Forgiveness," which applies to teachers who have worked full-time for five years in a low-income elementary or secondary school or educational service agency.

21.    The federal government also offers potential student loan forgiveness as a benefit of income-driven repayment ("IDR") programs.  Obtaining forgiveness through IDR programs requires a minimum of 20 or 25 years of payments.  No loans have been forgiven yet under any of the IDR programs, many of which, such as the income-based repayment ("IBR") program, have only been available relatively recently.  IDR programs allow eligible borrowers to choose to limit their monthly payments based on a percentage of their discretionary monthly income.  If any balance remains after making payments for 20 or 25 years, that amount may be discharged. However, because most borrowers will realize increased income over the payment period, monthly payment amounts under IDR programs may eventually increase to fully amortizing payments that would pay off the loans prior to reaching eligibility for loan discharge.  In those cases, the loans would not be forgiven.  Further, any discharged debt will likely be considered as income for tax purposes, requiring tax payments on the amount discharged.

22.    Consumers can apply for forgiveness and IDR programs through their student loan servicers at no cost; these programs do not require the assistance of a third-party company or payment of fees.

23.    Consumers enrolled in IDR or forgiveness plans can typically leave their plans and reenroll in them at a later date.

**Defendants' Deceptive Marketing of Student Loan Debt Relief Services**

24.     Defendants have promised to enroll consumers in student loan forgiveness or

other programs to reduce their student loan payments and balances.  Defendants have made this

claim in online advertising and on telemarketing calls.

25.     For example, one of Defendants' websites, www.strategicstudentsolution.com,

prominently states the following:

> Student Loan Forgiveness Program For Qualified Graduates.
> Lower Your student Loan Payments Today!
> 1 Payment Student Loan Debt Relief Option.

26.     The same website also offers:

> Payments as low as $0 Monthly
> One low monthly payment
> Save 60% or MORE on your monthly payment
> Free no obligation consultation and debt analysis
> Qualify for student loan forgiveness
> Benefit from government programs

27.     In some instances, consumers view the website or online advertising and call

Defendants' telemarketers for more information.  In other instances, Defendants make outbound

telemarketing calls to consumers to offer their services and convince student loan borrowers to

sign up with the company.

28.      Defendants' telemarketers have told consumers that Defendants would enroll

them in student loan forgiveness programs or other programs to reduce their monthly payments

or loan balances, and at the end of the programs, their student loans would be forgiven.

Defendants have sometimes followed up their telemarketing calls with emails.  For example, one

of Defendants' follow up emails to a prospective customer stated that Defendants "will get you

preapproved for Federal Government Programs that will forgive or eliminate your Federal

student loan . . . . we are a forgiveness program that will ensure forgiveness."

29.     Defendants have stated that their services require an initial fee, typically ranging

from $599 to $1200, and that monthly payments, typically $49.99, would be applied toward

consumers' loans.  Defendants' telemarketers often told consumers that after they made monthly

payments for three years, their loans would be forgiven.

30.     Contrary to Defendants' representations, consumers' monthly payments to

Defendants are not applied to their student loans; rather, they are kept as fees for Defendants'

services.  Further, barring rare instances of disability or closed schools, there are no student loan

forgiveness programs that provide forgiveness in three years or less.  Defendants, therefore,

generally could not have obtained loan forgiveness for consumers in this time frame.

31.     Defendants' telemarketers have typically collected consumers' payment

information on the initial phone call.  Defendants have withdrawn payments before they

performed work on consumers' loan accounts.

32.     In many instances, Defendants' telemarketers have e-mailed consumers a link to a

contract to sign electronically.  Defendants' telemarketers have typically pressured consumers

into quickly electronically signing the contract while the telemarketer is still on the phone.

Defendants' telemarketers have assured consumers that the contract simply reiterates the offer

for reduced payments and forgiveness.  Indeed, the language on the very first page reinforces

Defendants' earlier promises to provide debt relief.  It typically states that consumers will

receive "expert assistance" to "[o]btain a complete discharge of your student loan; if possible,

obtain a refund of payments you have on your loan, if appropriate[;] [n]egotiate an acceptable

10

settlement with your lender, and or establish a comfortable payment plan that will meet your needs[.]"

33.     Buried in the contract that consumers are rushed through, which is typically 16 to 20 pages, there is often a chart containing fee and payment information.  In some instances, the chart lists "Monthly Maint. Fee, Yearly renewals & Credit repair Fees" of $49.99 and an "Est. Total new Monthly Payment" of either $0 or $49.99, creating the impression that either consumers' new student loan payment is $0, or that the $49.99 monthly payment is being applied to consumers' student loans as their "Total" monthly payment for Defendants' services and the student loans.  Adding to the confusion, the contract typically states that the upfront "filing" fees are "NOT applied to clients Federal Student Loan balance," but it does not make the same statement about consumers' monthly payments.  In some instances, the contract also contains incongruous disclaimers contradicting the sales pitch.  They state, "I understand that Strategic Student Solutions will not be making monthly payments on my behalf" and "I understand that the fees paid to Strategic Student Solutions is [sic] for Document preparation and consultation services only and will not be applied to my student loan balance."  In the instances where these appear, they are on the very last page.

34.     In many instances, Defendants have instructed consumers not to contact, work with, make payments to, or respond to contacts from their loan servicers.  Instead, Defendants' representatives have told consumers to send any paperwork or bills they received from their loan servicers to Defendants, and that Defendants would handle it.

35.     In many instances, Defendants have failed to obtain the promised lower monthly payments or student loan forgiveness.  In many instances, consumers have discovered that

Defendants had not contacted their loan servicers at all.  In other instances, Defendants have contacted consumers' loan servicers, but only to place consumers' loans into forbearance.  This simply delayed consumers' discovery that their student loans were not being paid and that they had not been enrolled in a forgiveness or income-driven repayment program, while Defendants continued to collect fees.  As a result, many consumers have fallen behind on their student loan payments or have had additional interest accrue.

36.     In some instances, when consumers have contacted Defendants to cancel their enrollment in Defendants' program, Defendants have falsely told consumers that they could suffer adverse consequences for future eligibility for federal loan forgiveness programs.  In many instances, Defendants have refused or ignored requests for refunds by consumers.

**Defendants' False Promises to Provide Credit Repair**

37.     In many instances, Defendants have also made false promises that consumers'
credit would be improved as a result of their program.

38.     One of Defendants' websites, www.StrategicCreditSolution.com, states: "We also
offer a unique, legal and fast way to increase your FICO Score."

39.     Another of Defendants' websites, www.CreditReliefCenters.com, states: "We
only hire professionals with the highest level of experience in the credit industry, specifically in
Credit Repair areas. This allows us to fulfill our commitment of quality service and to over-
deliver to our clients, every time, every case.  For years, we have assisted thousands of
consumers to not only repair or delete erroneous information from their credit reports, but also to
rebuild their credit, providing legal alternatives to increase their FICO scores."

40.     In some instances, Defendants' telemarketers have also offered credit repair
services to consumers on initial sales calls.  Additionally, Defendants' contracts typically state
that the consumers' monthly payments were for, among other things, "Credit repair Fees."

41.     Echoing Defendants' websites, Defendants' contracts with consumers typically
promise credit repair services that would "improve client's FICO/credit scores and credit
history."

42.     In many instances, Defendants have failed to provide credit repair services or
improve consumers' credit scores and credit history.

13

**Defendants' Additional Unlawful Practices Once Consumers Sign Up for Services**

43.     Defendants have charged consumers initial and monthly fees for purported debt relief services before achieving any results, and, in many instances, have failed to achieve any results on behalf of the consumer.

44.     Defendants have also charged these advance fees before any credit repair services had been performed.  Defendants' advance fees have typically been in the range of $599 to $1,200 for the initial fee, with a $49.99 recurring monthly fee, for as long as 36 months.

## THE FTC ACT

45.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

46.     Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## VIOLATIONS OF THE FTC ACT

### Count I
### Deceptive Debt Relief Representations

47.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of debt relief services, Defendants have represented, directly or indirectly, expressly or by implication that:

      a.  Defendants generally will enroll consumers in student loan forgiveness or other programs that would lower their payments or balances;

      b.  consumers' monthly payments to Defendants generally will be applied to pay off the consumers' loans;

14

    c.   consumers' student loan debt generally will be forgiven in three years or less after payment of initial fees; and

    d.   if a consumer cancels his or her enrollment in a federal student loan forgiveness program, it is very difficult or impossible to re-enter another forgiveness program.

48.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 47 of this Complaint, such representations were false or not substantiated at the time Defendants made them.

49.    Therefore, Defendants' representations as set forth in Paragraph 47 of this Complaint are false or misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**Count II**
**Deceptive Credit Repair Representations**

50.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of credit repair services, Defendants have represented, directly or indirectly, expressly or by implication, that consumers' credit generally will be improved as a result of Defendants' program.

51.    In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 50 of this Complaint, such representations were false or not substantiated at the time Defendants made them.

52.    Therefore, the making of the representations as set forth in Paragraph 50 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

15

## THE TELEMARKETING SALES RULE

53.     Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter.  16 C.F.R. Part 310.

54.     Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing" as defined by the TSR, 16 C.F.R. § 310.2(dd), (ff), and (gg).  A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to a customer in exchange for consideration.  16 C.F.R. § 310.2(dd). A "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.  16 C.F.R. § 310.2(ff).  "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call.  16 C.F.R. § 310.2(gg).

55.     Defendants are sellers or telemarketers of "debt relief services" as defined by the TSR, 16 C.F.R. § 310.2(o).  Under the TSR, a "debt relief service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.  16 C.F.R. § 310.2(o).

56.     The TSR prohibits sellers and telemarketers from requesting or receiving payment of any fees or consideration for any debt relief service until and unless:

16

a.  The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and

b.  The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor; and to the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

　　i.  Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

　　ii.  Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt. 16 C.F.R. § 310.4(a)(5)(i).

57.     The TSR prohibits sellers and telemarketers from misrepresenting directly or by implication, any material aspect of any debt relief service, including, but not limited to, the

amount of money or the percentage of the debt amount that a customer may save by using the service.  16 C.F.R. § 310.3(a)(2)(x).

58.   Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

<u>**VIOLATIONS OF THE TELEMARKETING SALES RULE**</u>

**Count III**
**Advance Fee for Debt Relief Services**

59.   In numerous instances, in connection with the telemarketing of student loan debt relief services, Defendants have requested or received payment of a fee or consideration for debt relief services before:

   a.   Defendants have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and

   b.   The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor.

60.   Defendants' acts or practices, as described in Paragraph 59 of this Complaint, are abusive telemarketing acts or practices that violate Section 310.4(a)(5)(i) of the TSR, 16 C.F.R. § 310.4(a)(5)(i).

**Count IV**
**Misrepresentations**

61.     In numerous instances, in connection with the telemarketing of student loan debt relief services, Defendants have misrepresented, directly or indirectly, expressly or by implication, material aspects of their debt relief services, including, but not limited to

   a.   consumers' monthly payments to Defendants generally will be applied to pay off the consumers' loans;

   b.   Defendants generally will enroll consumers in student loan forgiveness or other programs that would lower their payments or balances;

   c.   consumers' student loan debt generally will be forgiven after three years or less once consumers pay the initial fees for Defendants' services; and

   d.   if a consumer cancels his or her enrollment in a federal student loan forgiveness program, it is very difficult or impossible to re-enter another forgiveness program.

62.     Defendants' acts and practices, as described in Paragraph 61 of this Complaint, are deceptive telemarketing acts or practices that violate Section 310.3(a)(2)(x) of the TSR, 16 C.F.R. § 310.3(a)(2)(x).

## THE CREDIT REPAIR ORGANIZATIONS ACT

63.     The Credit Repair Organizations Act took effect on April 1, 1997, and has remained in full force and effect since that date.

64.     Defendants are "credit repair organizations," as defined by the Credit Repair Organizations Act:

   [A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or

19

perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of . . . improving any consumer's credit record, credit history, or credit rating . . . .

15 U.S.C. § 1679a(3).

65.    The purposes of the Credit Repair Organizations Act, according to Congress, are:

> (1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b).

66.    The Credit Repair Organizations Act prohibits all persons from making or using any untrue or misleading representation of the services of the credit repair organization.  15 U.S.C. § 1679b(a)(3).

67.    The Credit Repair Organizations Act prohibits credit repair organizations from charging or receiving any money or other valuable consideration for the performance of any service that the credit repair organization has agreed to perform before such service is fully performed.  15 U.S.C. § 1679b(b).

68.    Pursuant to Section 410(b)(1) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b)(1), any violation of any requirement or prohibition of the Credit Repair Organizations Act constitutes an unfair or deceptive act or practice in commerce in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).  Pursuant to Section 410(b)(2) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b)(2), all functions and powers of the Commission under the FTC Act are available to the Commission to enforce compliance with the Credit Repair Organizations Act in the same manner as if the violation had been a violation of any Commission trade regulation rule.

## VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

### Count V
### Misleading Representations about Credit Repair Services

69.     In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of services to consumers by a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants have made representations about their credit repair services, including, but not limited to, the representation that consumers' credit generally will be improved as a result of Defendants' program.  These representations are untrue or misleading because consumers' credit generally is not improved as a result of Defendants' program.

70.     Defendants have thereby violated Section 404(a)(3) of the Credit Repair Organizations Act.  15 U.S.C. § 1679b(a)(3).

### Count VI
### Advance Fee for Credit Repair Services

71.     In numerous instances, in connection with the operation of a credit repair organization, as that term is defined in Section 403(3) of the Credit Repair Organizations Act, 15 U.S.C. § 1679a(3), Defendants have charged or received money or other valuable consideration for the performance of credit repair services that Defendants have agreed to perform before such services were fully performed.

72.     Defendants have thereby violated Section 404(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679b(b).

**Count VII**
**Relief Defendant**

73.     Relief Defendant, DG Investment Properties LLC, has received, directly or indirectly, funds or other assets from Defendants that are traceable to funds obtained from Defendants' customers through the deceptive acts or practices described herein.

74.     Relief Defendant is not a bona fide purchaser with legal and equitable title to Defendants' customers' funds or other assets, and Relief Defendant will be unjustly enriched if it is not required to disgorge the funds or the value of the benefit it received as a result of Defendants' deceptive acts or practices.

75.     By reason of the foregoing, Relief Defendant holds funds and assets in constructive trust for the benefit of Defendants' customers.

## CONSUMER INJURY

76.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, the TSR, and the CROA.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

77.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts,

restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

78.    Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), authorize this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the TSR and the Credit Repair Organizations Act, including the rescission or reformation of contracts, and the refund of money.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. §§ 53(b), Section 6(b) of the Telemarketing Act, 15 U.S.C. § 6105(b), and Section 410(b) of the Credit Repair Organizations Act, 15 U.S.C. § 1679h(b), and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to a temporary and preliminary injunction, asset freeze, appointment of a receiver, an evidence preservation order, and expedited discovery.

B.    Enter a permanent injunction to prevent future violations of the FTC Act, the TSR, and the CROA by Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, the TSR, and the CROA, including but not

limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.     Enter an order requiring Relief Defendant to disgorge all funds and assets, or the value of the benefit it received from the funds and assets, which are traceable to Defendants' deceptive acts or practices; and

E.     Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Respectfully submitted,

DAVID C. SHONKA
Acting General Counsel

Dated: 5/15/2017

MIYA TANDON
(Florida Special Bar No. A5502005)
ADAM M. WESOLOWSKI
(Florida Special Bar No. A5502173)
NIKHIL SINGHVI
(Florida Special Bar No. A5502332)
Federal Trade Commission
600 Pennsylvania Ave., NW, CC-10232
Washington, DC 20580
(202) 326-2351 (Tandon)
(202) 326-3068 (Wesolowski)
(202) 326-3480 (Singhvi)
mtandon@ftc.gov
awesolowski@ftc.gov
nsinghvi@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION