UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-CV-80619-DIMITROULEAS/SNOW

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

STRATEGIC STUDENT SOLUTIONS LLC, a
limited liability company, STRATEGIC CREDIT
SOLUTIONS LLC, a limited liability company,
STRATEGIC DEBT SOLUTIONS LLC, a limited
liability company, STRATEGIC DOC PREP
SOLUTIONS LLC, a limited liability company,
STUDENT RELIEF CENTER LLC, a limited
liability company, CREDIT RELIEF CENTER
LLC, a limited liability company, and
DAVE GREEN, individually and as an officer of
STRATEGIC STUDENT SOLUTIONS LLC,
STRATEGIC CREDIT SOLUTIONS LLC,
STRATEGIC DEBT SOLUTIONS LLC,
STRATEGIC DOC PREP SOLUTIONS LLC,
STUDENT RELIEF CENTER LLC, and CREDIT
RELIEF CENTER LLC,

    Defendants, and

DG INVESTMENT PROPERTIES LLC,

    Relief Defendant.
_____/

**RECEIVER'S REPLY TO DEFENDANTS' RESPONSE TO RECEIVER'S FRIST
APPLICATION FOR RECEIVER'S FEES AND ATTORNEYS' FEES**

    Charles H. Lichtman, the Court's appointed Receiver ("Receiver"), submits this Reply in

Support of his First Application for Receiver's Fees and Attorneys' Fees Through July 21, 2017

[ECF No. 66] (the "Application") and states:

1

## Introduction

The Receiver believes the quality and results of his work and that of his attorneys, since the inception of this matter, speak for themselves. Notably, the FTC does not object to the pending Application. [ECF No. 73]. Following Receiver's appointment and the immediate access into the Defendants' various premises, the Receiver took immediate steps to take control of the receivership estate's assets. As a result of the Receiver's expedient analysis of financial transaction records, the Receiver also filed his Motion for Order to Show Cause Why Dave Green Should Not Be Held in Contempt of Court [ECF No. 35] against Defendant Dave Green ("Green") to compel turnover of funds transferred out of the receivership estate by Green. Thereafter, Green agreed to: (i) stipulate to a Preliminary Injunction, (ii) grant a first lien position to the receivership estate in his alleged homestead, and (iii) stipulate that over 20 residential properties purchased with corporate money would come under the control of the Receiver. The Receiver has also taken custody of those various homes, installed a property management company to cost-effectively manage the properties, started the process of winding down the Defendants' businesses and begun a detailed investigation into the improper use of company funds, fraudulent transfers and other activities that presently comprises the Receiver's work product. The Court should overrule the objection and approve the Application because as demonstrated below, the objection is substantively meritless.

## Response to Certain Contentions Made by Defendants

The Defendants' myriad of objections can be summarized as: (i) the Receiver is seeking a "staggeringly large amount from the funds available" and this is unfair and will deplete the receivership estate. [ECF No. 72 at ¶2, ¶3, ¶4]; (ii) the Application as drafted does not permit meaningful review; *Id.* at ¶9; and (iii) the hourly rate charged was too high and the work was

assigned to team members whose rates are too high. *Id.* at ¶9 and ¶10. Each of these objections is misplaced. Of course, the Receiver's and attorneys' fee would be less if the Defendants had: (i) maintained accurate and trustworthy records, (ii) not attempted to hide and secret assets, (iii) cooperated with the Receiver and the FTC, and (iv) provided accurate financial reports. As an actual and incredible example, despite being in business for years, the six corporate defendants had no general ledgers, either for a single entity, or on a consolidated basis, and very few financial records exist.

Moreover, the Defendants' contention that the Receiver seeks 8% of all frozen funds is massively misleading. *Id.* at ¶2. The reality is that the Receiver has added tremendous value to the receivership estate already by recovering more than 20 residential properties that can be liquidated for the benefit of the receivership estate and by securing over $500,000 in value that Green improperly transferred after being served by the TRO. The foregoing also doesn't include the potential recovery of additional funds from fraudulent transfer claims that may be brought against those who improperly received funds from the Defendants and/or Relief Defendant.

Green also complains about the Receiver getting paid because Green has not received money from the receivership estate to support his family and lifestyle. Notably, Green supplied a budget to the Receiver and the FTC that seeks an exorbitant sum that includes, as an example, maintenance on numerous high-end vehicles, including a Maserati. In the Receiver's experience in cases where defendants have sought family sustenance payments they have only occasionally been awarded. Moreover, such awards are generally the minimum amount needed to truly to support a defendant's family. These payments are not designed to continue the exact prior lifestyle that the defendants lived while perpetrating the fraud that made them defendants in the respective case at issue. More to the point, this Court's Preliminary Injunction does not prohibit

Green from seeking employment, and to the Receiver's knowledge, Green has not taken new employment whatsoever. Additionally, the Receiver intends to investigate how Green has been supporting himself for the last 90 days if all of Green's money was purportedly frozen at the outset of this case.

Green also objects to payment of Receiver and attorneys' fees because his ability to make full disclosure to the Receiver about his and the various Defendant entities has been hampered by the Receiver taking custody of Green's corporate records and computers. [ECF No. 72 at ¶6]. The Receiver doesn't know what this argument has to do with the pending Application, but does note that all documents and records have been offered for review, and indeed, Green has visited the Berger Singerman offices to review records and was granted access to inspect records at the business premises of the corporate defendants.

Notably and curiously, paragraph 6 of Green's response states, "Mr. Green, who is not an accountant, has arranged visits to his former offices to access the records and computer systems." *Id*. The Receiver advises that the Defendants' former offices now in the custody and control of the receivership have been broken into violently twice in the past month. In both break-ins, file cabinets were rifled through and the offices were left in shambles, but nothing else apparently stolen except for the large-screen television ripped from the wall in Green's office, and the hard drive out of Green's personal computer. The Receiver represents that he has spoken to building management who has indicated that the building has suffered no other burglaries in years, yet Green's former offices have been broken into twice since this receivership began. Is it a coincidence that the same offices hidden on the fourth floor of a building are broken into twice with file cabinets being the main target of the burglary? The Court will hear more about this soon, as well.

Green also complains that the billing statements filed of record with the Application are vague and opaque because of redactions. *Id.* at ¶9. The Court knows, and the Receiver believes that defense counsel knows from their substantial experience in representing defendants in FTC proceedings, that redactions in legal fee statements filed with the Court are commonplace because the data redacted is privileged attorney work product.

Green also is dead wrong on how this case has been staffed. *Id.* at ¶10. At the time of the "immediate access" to the Defendant's three offices, it was necessary to sufficiently staff each location with lawyers to assure everything went smoothly, and that's exactly what happened. Since then, the Receiver has utilized two partners whose work is distinct from each other so there is no duplication of efforts, an associate and a paralegal, with as much work pushed to lawyers and paralegals with lower hourly rates. Furtherer, the Receiver is charging only $495 per hour which is a $200 discount off of his normal $695 hourly rate. Indeed, no lawyer staffed on this case after that initial immediate access (one day) has an hourly rate in excess of $500.00. Indeed, the following chart breaks down the hours and rate of each timekeeper:

| Name | Title | Hours | Rate | Total |
|---|---|---|---|---|
| Charles H. Lichtman | Receiver | 83.40 | 495.00[1] | $41,283.00 |
| Gavin Gaukroger | Partner | 105.50 | 435.00 | $45,892.50 |
| Andrew Hinkes[2] | Partner | 4.20 | 435.00 | $1,827.00 |
| Isaac Marcushamer | Partner | 38.70 | 495.00 | $18,382.50 |
| Alejandro Miyar | Associate | 10.70 | $330.00 | $3,531.00 |
| Jeffery Wertman[2] | Partner | 1.80 | 535.00 | $963.00 |

---

[1] Discounted from normal rate of $695.00 per hour.
[2] Only participated during the "immediate access" at the inception of the case.

| P. B. Zuckerman[2] | Partner | 11.20 | 575.00 | $6,440.00 |
|---|---|---|---|---|
| Paralegal | Paralegal | 203.70 | 235.00 | $47,869.50 |

Lastly, the Defendants provided the Court with an order entered in another FTC case where Mr. Lichtman served as the receiver and where the FTC raised an issue about the amount of his hourly rate, which at that time was not discounted. [ECF No. 72-1]. Notably, Defendants did not tell the Court that (i) Judge Scola found that Mr. Lichtman's hourly rate was indeed fair, reasonable and in line with market rates, and (ii) Mr. Lichtman regularly voluntarily discounted significant fees for work he believed was necessary to the receivership on investigatory matters and in excess of $100,000 was not charged to the estate. Ultimately, every penny that Mr. Lichtman requested as receiver's fees, attorneys' fees, and accountant's fees were authorized for payment by Judge Scola.

In sum, there is no substantive basis to deny the pending application and accordingly, the Receiver asks that the Court grant the application in full.

**WHEREFORE**, Receiver, Charles H. Lichtman, and Berger Singerman respectfully request that the Court enter an Order Granting Receiver's First Application for Receiver's Fees and Attorneys' Fees Through July 21, 2017 [ECF No. 66]and granting such other and further relief as this Court deems just and proper.

**BERGER SINGERMAN LLP**
Counsel for Charles H. Lichtman, Receiver
350 East Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 333014
Telephone: (954) 525-9900

By:/s/ *Isaac Marcushamer*
Gavin C. Gaukroger, Esq.
Florida Bar No. 0076489
ggaukroger@bergersingerman.com

6

>Isaac Marcushamer, Esq.
>Florida Bar No. 60373
>imarcushamer@bergersingerman.com
>drt@bergersingerman.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system on all parties on the attached Service List this 11th day of August, 2017.

>By: */s/ Isaac M. Marcushamer*_____
>Isaac M. Marcushamer, Esq.

## SERVICE LIST

Miya Tandon, Esq.
mtandon@ftc.gov
Adam M. Wesolowski, Esq.
awesolowski@ftc.gov
Nikhil Singhvi, Esq.
nsinghvi@ftc.gov
**FEDERAL TRADE COMMISSION**
600 Pennsylvania Ave., NW, CC-10232
Washington, DC 20580
(202) 326-2351 (Tandon)
(202) 326-3068 (Wesolowski)
(202) 326-3480 (Singhvi)

Jeffrey A. Backman, Esq.
Jeffrey.backman@gmlaw.com
Richard W. Epstein, Esq.
Richard.epstein@gmlaw.com
**GREENSPOON MARDER, P.A.**
200 E. Broward Blvd.
Suite 1500
Ft. Lauderdale, FL 33301
Tel: (954) 491-1120
Facsimile: (954) 343-6958

8025327-4