UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-CV-80619-WPD

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

STRATEGIC STUDENT SOLUTIONS LLC, a limited liability company, et al.,

    Defendants, and

DG INVESTMENT PROPERTIES LLC,

    Relief Defendant.

**PLAINTIFF FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANTS' COUNSEL'S RENEWED MOTION TO WITHDRAW AS COUNSEL AND MOTION FOR PAYMENT FROM RECEIVERSHIP ESTATE**

**I.      INTRODUCTION**

Counsel for Defendants, the law firm of Greenspoon Marder, P.A. and Attorneys Richard W. Epstein and Jeffrey A. Backman (collectively, "Greenspoon Marder"), has renewed its motion to withdraw and has moved for the Court to release funds under the receivership, held for the benefit of consumer victims, for its attorneys' fees and costs.  The Federal Trade Commission ("FTC") does not oppose the motion to withdraw with respect to the Individual Defendant.  The FTC requests that a further reasonable and limited period of time be provided for Corporate Defendants to find substitute counsel to avoid prejudicial delays in the proceedings, as corporations may not appear unrepresented.  The FTC strongly opposes the use of consumer funds for attorneys' fees and costs for the following reasons: (1) the consumer harm in this case greatly exceeds the frozen assets, and such depletion would impair the Court's ability to provide consumer redress; and (2) defense counsel, rather than consumers, should bear the risk of nonpayment by the Defendants.  Greenspoon Marder's argument that maintaining the asset freeze and preserving consumers' funds for potential return to consumers is somehow "unjust enrichment" of the receivership estate is inapposite.  The FTC urges the Court to deny Greenspoon Marder's self-serving request in order to preserve the Court's ability to grant effective final relief for consumers.

**II.     LEAVING CORPORATE DEFENDANTS WITHOUT COUNSEL WILL CAUSE UNNECESSARY DELAY IN THE RESOLUTION OF THIS MATTER**

On June 27, 2017, Greenspoon Marder filed a Motion to Withdraw as Counsel of Record for Defendants and requested a 30-day stay in the case for Defendants and the Relief Defendant to seek other counsel.  (ECF No. 49.)  The Individual Defendant and the FTC subsequently filed oppositions to Greenspoon Marder's Motion to Withdraw.  (ECF Nos. 51 and 59, respectively.)  In addition, the Receiver filed a Limited Objection to the Motion to Withdraw.  (ECF No. 57.)

On July 21, 2017, the Court held that Greenspoon Marder could withdraw from the representation of the Individual Defendant upon notification by the FTC and the Receiver that the Defendants' financial disclosures are complete, and that Greenspoon Marder could withdraw from the representation of the Corporate Defendants upon notice that they have retained new counsel, allowing the motion to be renewed in 30 days.  (ECF No. 64.)

Since that time, the Defendants have not provided any further information and their financial disclosures remain incomplete.  Greenspoon Marder had not communicated to the FTC that they made attempts to obtain such information until the filing of its renewed motion to withdraw.

The FTC does not oppose Greenspoon Marder's renewed request to withdraw from representation of the Individual Defendant, in light of Greenspoon Marder's representation, for the first time, that it has "made repeated efforts to have Mr. Green complete the financial disclosures, without any success."  (ECF No. 79).

The primary concern of the FTC is that any stay resulting from Corporate Defendants going unrepresented would result in an unnecessary delay in resolving this matter.  A corporation cannot appear in federal court without counsel.  *Rowland v. California Men's Colony, 506 U.S. 194*, 201-2, 217 (1993); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).  Consequently, allowing Greenspoon Marder to withdraw as counsel for the Corporate Defendants and the Relief Defendant without substitute counsel in place would prevent the Corporate and Relief Defendants from appearing and cause unnecessary delay in this case, and in potentially providing consumers with redress.  Thus, the FTC respectfully requests that a further reasonable and limited period of time be provided for Corporate Defendants and the Relief Defendant to find substitute counsel.

### III. GREENSPOON MARDER'S MOTION TO MODIFY THE ASSET FREEZE TO PAY ITS FEES SHOULD BE DENIED

The Court has broad authority to enter an asset freeze to preserve the possibility of complete and meaningful relief to consumers at the conclusion of litigation. *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984). Further, district courts have a duty to protect frozen assets from dissipation for the benefit of injured consumers. *FTC v. Worldtravel Vacation Brokers*, 861 F.2d 1021, 1031 (7th Cir. 1988). Here, the release of frozen funds for the Defendants' representation by three law firm partners would deplete the funds Defendants extracted from consumers through their fraudulent scheme, which could otherwise be returned to consumers.

#### A. Procedural Background

This Court instituted an asset freeze in the TRO on May 15, 2017, finding that the FTC is likely to prevail on the merits, and that the FTC has established a likelihood of success in showing that Defendants materially misrepresented their debt relief and credit repair services and charged illegal advance fees. (ECF No. 10.) On May 26, 2017, the asset freeze was continued in the Preliminary Injunction ("PI"). (ECF No. 42.)

#### B. Greenspoon Marder's Request For Attorneys' Fees Should Be Denied Because Consumer Harm Greatly Exceeds the Frozen Assets

Because the Defendants' potential liability far exceeds their frozen assets, their counsel's motion to modify the asset freeze should be denied to prevent further depletion of the available limited assets. "When frozen assets are less than the amount needed to compensate consumers for their losses, a district court can properly refuse to unfreeze assets" because one purpose of the asset freeze is to "ensure that funds are available to provide consumers redress and deprive wrongdoers of their ill-gotten gains." *FTC v. IAB Mktg. Assocs., LP*, No. 12-61830-CIV, 2013

3

WL 2433214, at *2 (S.D. Fla. June 4, 2013) (citing *FTC v. RCA Credit Servs., LLC*, No. 8:08-CV-2062-T27MAP, 2008 WL 5428039, at *4 (M.D. Fla. Dec. 31, 2008)).  Where funds remaining in the receivership estate will not be sufficient to pay all the claims of consumer victims, courts in the Eleventh Circuit have routinely denied requests to release frozen funds for attorneys' fees.  *RCA Credit Servs.*, 2008 WL 5428039, at *4 (denying release of frozen funds due to likely insufficiency of funds to satisfy a final order granting restitution to consumers); *FTC v. Lanier Law, LLC*, No. 3:14-cv-786-J-34PDB, 2015 WL 9302786, at *2 (M.D. Fla. Dec. 22, 2015) (denying request for attorneys' fees because "the Court has a duty to ensure that [Defendants'] assets are available to make restitution to the injured customers" and assets fall short of potential liability); *IAB Mktg.*, 2013 WL 2433214, at *2 (post-PI "funds should not be released from the asset freeze to pay for the…Defendants' attorney fees because the…Defendants' monetary liability greatly exceeds the frozen funds"); *FTC v. Williams, Scott & Assocs. LLC*, No. 1:14-CV-1599-HLM, 2015 WL 7351993, at *1 (N.D. Ga. Sept. 22, 2015) (same).

  Here, only approximately $2 million is currently frozen in bank accounts.  (ECF No. 66.)  In addition, the Receiver has taken control of rental properties valued at approximately $3.7 million by the Defendants, and holds a $620,000 lien on the Individual Defendant's house to cover the funds that the Individual Defendant transferred in violation of the asset freeze.  In comparison, Defendants' liability for the violations alleged in the FTC's Complaint is estimated by the FTC to be significantly over $11 million dollars; in fact, the numbers in Defendants' own financial disclosures indicate that the amount of damages is over $17 million.  These figures vastly exceed the value of the frozen assets and equity.  Thus, Greenspoon Marder's request to lift the freeze should be denied to preserve the remaining funds for potential consumer redress.

4

### C. Defense Counsel, Not Consumers, Should Bear the Risk of Nonpayment

Greenspoon Marder is not entitled to be paid from consumers' frozen funds. Courts in the 11th Circuit have held that parties "may not use their victims' assets to hire counsel to help them retain the fruits of their violations." *RCA Credit Servs., LLC*, 2008 WL 5428039, at *4 (citing *S.E.C. v. Quinn*, 997 F.2d 287, 289 (7th Cir.1993)); see also *IAB Mktg.*, 2013 WL 2433214, at *2. Greenspoon Marder's proposed relief would necessarily allow Defendants to do just that.[1]

Greenspoon Marder's difficulty receiving remuneration from consumer funds is particularly unsympathetic in this case because there was an asset freeze in place prior to the law firm entering its appearance. Given the existence of an asset freeze, an attorney would be aware that the Defendants' ability to pay future legal fees might be temporarily impeded, at least until the Individual Defendant has found a new job.[2] As stated previously in this Court, "[m]aintaining the asset freeze is also not unfair to the…Defendants' attorneys because these attorneys knew that the Court's Temporary Restraining Order…froze the…Defendants' assets

---

[1] The proposed relief would relieve Defendant Green of his responsibility to pay for his own representation. The Defendant should not have his representation paid for with consumer funds because he has unclean hands. See *S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1366–67 (S.D. Fla. 2006) (holding that under the cardinal rule of equity that one must come to equity with clean hands, the defendant's "unclean hands have closed the door on any attempt…to seek relief from the Court's equitable asset freeze order"). Green has violated the order multiple times by unlawfully transferring funds and attempting to redirect consumer-facing telephone numbers to another operation, (ECF No. 39), and he continues to violate the order by refusing to provide complete financial disclosures, thereby "clos[ing] the door" to any such modification.

[2] Neither the TRO nor the PI precludes Mr. Green or his family from obtaining funds through gainful employment. To date, there is no evidence of any efforts by Mr. Green to seek gainful employment since entry of the TRO to cover the expenses relating to his representation. Even if the Court were to entertain depletion of frozen assets for attorneys' fees, it should not do so until the Defendants can demonstrate they will be unable to contribute to those defense costs. *See, e.g., FSLIC v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987) ( "[T]he burden . . . will be on the defendant to satisfy the court that he can secure the services of an attorney only if assets subject to the freeze order are released").

5

before the attorneys agreed to represent them, and therefore these attorneys assumed the risk of not getting paid." *IAB Mktg.*, 2013 WL 2433214, at *3; *see also Williams, Scott & Assocs.*, 2015 WL 7351993, at *3 (requiring that defense counsel bear the risk of nonpayment because they "should have been well aware" that Defendant might lack funds to pay attorneys' fees when they began representation). Therefore, defense counsel, not the victims of Defendants' scheme, should bear the risk of nonpayment.

### D. Greenspoon Marder's Fee-Shifting Arguments Are Inapposite

Greenspoon Marder's fee-shifting argument is inapplicable in the present case. *Erkins v. Bryan*, 785 F.2d 1538 (11th Cir. 1986), a fee-shifting case cited by Greenspoon Marder, relates to a decertified union on one side, and its former members on the other, and fee-shifting was expressly authorized under a relevant statute. The Court notes that a Supreme Court case, *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), "may spell the end of fee-shifting in the absence of statutory authorization," as is the case here. *Erkins*, 785 F.2d at 1547. Greenspoon Marder's reliance on *Van Gemert v. Boeing Co.*, 573 F.2d 733 (2d Cir.), *on reh'g,* 590 F.2d 433 (2d Cir. 1978), *aff'd,* 444 U.S. 472 (1980), is similarly misplaced. This case relates to whether class action attorneys' fees should be paid from the entire class fund or only by those who claimed money and thereby benefited monetarily from the attorneys' efforts. Here, the FTC and Receiver have received no such benefit. Greenspoon Marder's work—attempting to obtain its client's compliance with a Court order—is not primarily a benefit to the FTC or Receiver, for which consumer funds should be allocated. Rather, it is performing work, which it failed to do when the order was entered three months ago, that is a typical part of representing its own client.

Greenspoon Marder's argument that maintaining the asset freeze and preserving consumer funds would amount to "unjust enrichment" is inapposite. As Greenspoon Marder itself recognizes, the underlying rationale for the fee-shifting cases it cites is a concern that the other party is not "unjustly enriched." (ECF No. 79 at ¶ 6.) *See Erkins*, 785 F.2d at 1548 ("[s]uch fee-shifting is based on the common benefit theory, the equitable principle which requires that those who directly benefit by litigation must reimburse the successful plaintiff's costs or stand unjustly enriched"); *Van Gemert*, 573 F.2d at 735. Here, that is not a concern for two reasons: (1) neither the Receiver, nor the consumers whose funds are held in the receivership, are unduly "benefiting" from Greenspoon Marder's work with its own client to come into compliance with a court order; and (2) as the funds are being preserved to return to consumers, the victims of Defendants' scam will not be "unjustly enriched" by having their own funds remain in the Receivership for potential redress. Thus, Greenspoon Marder's reliance on fee-shifting case law is misplaced, and does not justify the release of frozen funds.

## IV.     CONCLUSION

For these reasons, the FTC requests that the Court provide a limited amount of additional time for Corporate Defendants and the Relief Defendant to secure new counsel. Greenspoon Marder's request to modify the asset freeze to pay its fees and costs should be denied to preserve funds to return to consumer victims of the Defendants' fraudulent operation.

Respectfully submitted,

Dated:  September 11, 2017              _/s/*Miya Tandon*_____
                                        MIYA TANDON
                                        (Florida Special Bar No. A5502005)
                                        ADAM M. WESOLOWSKI
                                        (Florida Special Bar No. A5502173)
                                        Federal Trade Commission

600 Pennsylvania Ave., NW, CC-10232  
Washington, DC 20580  
(202) 326-2351 (Tandon)  
(202) 326-3068 (Wesolowski)  
mtandon@ftc.gov  
awesolowski@ftc.gov  

Attorneys for Plaintiff  
FEDERAL TRADE COMMISSION

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all counsel of record via ECF on September 11, 2017.

*/s/ Miya Tandon*
Miya Tandon

9